UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC RICHARD ELESON,<br><br>    Plaintiff,<br><br>    v.<br><br>SCOTT TIPPEN, et al.,<br><br>    Defendants. | No. 2:14-cv-2019 KJM DB P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this action brought pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, against defendant United States Postal Service ("USPS"). Before the court is defendant's motion for summary judgment for lack of jurisdiction. Alternatively, the USPS seeks judgment as a matter of law. Plaintiff opposes the motion. For the reasons set forth below, the undersigned agrees that the USPS satisfied its disclosure obligations and will recommend that defendant's motion be granted.

**I.    Plaintiff's Allegations**

On or around May 2013, a Mule Creek State Prison ("MCSP") "Letter Carrier," Ray Garcia, returned to plaintiff two 2-day Flat Rate Priority Mail Envelopes because they were "over 13 ounce." Compl. Ex. 1 (ECF No. 1 at 14-15). Plaintiff claims that this individual had no authority to refuse to mail plaintiff's envelopes.

////

1

On June 21, 2013, plaintiff submitted a FOIA request to the Ione, California Postmaster. He received a response from the USPS dated July 26, 2013, but no documents or information was provided. Dissatisfied, plaintiff pursued a writ of mandamus in the California courts between August 1, 2013, and December 25, 2013. When these efforts proved unsuccessful, plaintiff appealed the USPS's denial of the FOIA request to the Postmaster General in Washington, D.C.

On December 30, 2013, plaintiff submitted a second FOIA request. He received a denial from the USPS dated January 27, 2014. Plaintiff then filed another appeal on May 17, 2014.

Plaintiff seeks injunctive relief and damages.[1]

## II.     Legal Standards

### A.     General Summary Judgment Standards

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "Where the non-moving party bears the burden of proof at trial,

---

[1] Attached to plaintiff's complaint is a proposed Order of Judgment, which includes a $1,000 monetary judgment against defendant. See Compl. (ECF No. 1 at 9-10). "There is no provision under FOIA which provides for an award of money damages for alleged wrongs by federal agencies." Gasparutti v. United States, 22 F. Supp. 2d 1114, 1117 (C.D. Cal. 1998); see also O'Toole v. I.R.S., 52 Fed. Appx. 961, 962 (9th Cir. 2002) ("O'Toole failed to state a valid FOIA claim because he requested only monetary damages in this action, and the statute does not authorize such relief. See 5 U.S.C. § 552(a)(4)(B).") Plaintiff's pursuit of monetary damages is thus not recoverable by a FOIA claim.

the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. Summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 447 U.S. at 248.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475

U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

**B.    Summary Judgment in FOIA Cases**

"The Freedom of Information Act was enacted to facilitate public access to Government documents." U.S. Dep't of State v. Ray, 502 U.S. 164, 173 (1991). The purpose of the Act is "'to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.'" Id. (citing Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976)). "Consistently with this purpose, as well as the plain language of the Act, the strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents." Id.

Courts faced with a motion for summary judgment in a FOIA case generally must conduct a two-step inquiry. Berman v. CIA, 501 F.3d 1136, 1139 (9th Cir. 2007). The first step assesses whether the agency involved met its investigative obligations under FOIA. Zemansky v. U.S. E.P.A., 767 F.2d 569, 571 (9th Cir. 1985). An agency can prove that it met its obligations by showing that it conducted a search "reasonably calculated" to uncover all relevant documents requested under FOIA. Hamdan v. U.S. Dep't of Justice, 797 F.3d 759, 770 (9th Cir. 2015). "An agency can demonstrate the adequacy of its search through reasonably detailed, nonconclusory affidavits submitted in good faith." Id. (internal quotation marks omitted). "Affidavits submitted by an agency to demonstrate the adequacy of its response are presumed to be in good faith." Id.

(quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)). "In evaluating the adequacy of the search, the issue 'is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*.'" Id. (emphasis in original) (quoting Lahr v. Nat'l Transp. Safety Bd., 569 F.3d 964, 987 (9th Cir. 2009)).

The second step requires the court to consider whether the agency has adequately demonstrated that any information not disclosed to the FOIA requester is protected by at least one of the enumerated exemptions. Hamdan, 797 F.3d at 769.

"Summary judgment is the procedural vehicle by which nearly all FOIA cases are resolved." Nat'l Res. Def. Council v. U.S. Dep't of Def., 388 F. Supp. 2d 1086, 1094 (C.D. Cal. 2005) (quotations omitted). "Courts are permitted to rule on summary judgment in FOIA cases solely on the basis of government affidavits describing the documents sought." Lion Raisins v. U.S. Dep't of Agric., 354 F.3d 1072, 1082 (9th Cir. 2004), abrogated on other grounds by Animal Legal Def. Fund v. U.S. Food & Drug Admin., 836 F.3d 987 (9th Cir. 2016). "[I]f there are genuine issues of material fact in a FOIA case, the district court should proceed to a bench trial or adversary hearing. Resolution of factual disputes should be through the usual crucible of bench trial or hearing, with evidence subject to scrutiny and witnesses subject to cross-examination. The district court must issue findings of fact and conclusions of law." Animal Legal Def. Fund, 836 F.3d at 990 (citation omitted).

**III.   Undisputed Facts**

    **A.   Plaintiff's First FOIA Request**

On June 21, 2013, plaintiff sent an FOIA request ("the First Request") to the "Postmaster" in Ione, California asking for the following information:

> [Qn. 1.1] Please provide me with a list of items of Documentation/Authorization necessary for a State Employee to become a "Letter Carrier" (identified in 18 USC §1702/1703) to be able to bring U.S. Mail from MULE CREEK STATE PRISON to the IONE, CA U.S.P.S. OFFICE, and pick up U.S. Mail from the IONE, CA U.S.P.S. OFFICE and take it to MULE CREEK STATE PRISON for distribution to Inmates and the Institution/Administration (e.g. background check, bonding, driving license, Postmaster approval, etc.)

5

> [Qn. 1.2] Secondly, would this "Person" be required to Carry this "Letter Carrier Card" on their person while performing the duties cited above?
>
> [Qn. 1.3] Thirdly, would this "person," while performing those duties, be subject to the penalties describe3d in 18 USC §1702/1703?
>
> [Qn. 1.4] Lastly, if you were presented with a Sworn Affidavit and evidence that a person committed a violation of said Statute, would you be required to initiate and [sic] investigation? Resulting in Arrest & Prosecution?

Compl. Ex. 1.

On July 26, 2013, counsel for the USPS, Deborah Winslow-Portillo, responded to Qn. 1.1 by stating that a search of the Postal Service manuals produced no documents specific to letter carriers who deliver to prisons; she then directed plaintiff to the USPS website for publicly available information under the "Careers" link for general letter carrier employment requirements. Compl. Ex. 2. Ms. Winslow-Portillo denied Qns. 1.2, 1.3, and 1.4 on the ground that "these are not requests for records maintained by the Postal Service…." Id.

**B.    Plaintiff's Second FOIA Request**

On December 30, 2013, plaintiff sent a second FOIA request ("the Second Request") to the Ione, California post office asking for the following:

> [Qn. 2.1] Pursuant to Federal Crop Insurance v. Merrill, et al., 332 US 380, 384: 84 L.Ed. 10; 68 S. Ct. 1 (1974), DEMAND is hereby made for a copy of your "License to Practice Law" with your signed Oath of Office endorsed on the reverse thereof [B. & P Code §6067], and a copy of the "Certificate of Admission" (to practice Law in CA) [B. & P Code §6064].
>
> [Qn. 2.2] A copy of any documents in your possession, under your control, or within your system of records, signed by MR. RAY GARCIA (or any STATE OF CALIFORNIA employee) that would be required to be carried on his person while performing the duties of an "Authorized Letter Carrier," as cited in 18 USC §1702 & §1703.
>
> [Qn. 2.3] A copy of any documents in your possession, under your control, or within your system of Records, signed by MR. RAY GARCIA, (or any STATE OF CALIFORNIA EMPLOYEE) that said person voluntarily signed to be subject to 18 USC §1702 & §1703; or was authorized to be a "Letter Carrier."
>
> [Qn. 2.4] A copy of any MEMORANDUM or ORDER initiating or relating to an Investigation pursuant to the Facts stated in

6

> Requester's Sworn Affidavit (B.49(m)) provided to Respondent with Requester's F.O.I.A. Request of June 21, 2013, regarding the Postmaster, IONE, CA.

Compl. Ex. 3.

In the affidavit referenced in Qn. 2.4, which was attached to the Second Request, plaintiff set forth the factual basis of his grievance against MCSP Mailroom employee Ray Garcia, whom plaintiff identifies as a "Letter Carrier." Plaintiff claimed that on May 8, 2013, Ray Garcia returned two 2-day Flat Rate Priority Mail Envelopes because they exceeded 13 ounces. Plaintiff claimed Ray Garcia exceeded his authority when he returned the mail and violated a number of statutes amounting to illegal and criminal behavior.

The USPS, again through Ms. Winslow-Portillo, responded to the Second Request on January 27, 2014. Compl. Ex. 4. This letter noted that Ms. Winslow-Portillo's "License to Practice Law" was not a document within the possession of the USPS. Id. It also noted that there were no documents in the USPS's possession and control as to Qns. 2.2, 2.3, and 2.4: "[T]he Agency does not have any record of a 'RAY GARCIA' who works for the Postal Service out of the Ione Post Office; the Agency does not require carriers to carry the documents described in request numbers (2) and (3); and the Agency does not have the sworn affidavit in request number (4)." Id.

**IV. Discussion**

**A. Requests Seeking Documentation**

Defendant moves for summary judgment on the ground that it conducted a reasonable search and properly responded to those questions in plaintiff's First and Second Requests that sought documentation within the USPS's custody or control. See Decl. of Deborah Winslow-Portillo in Supp. of Def.'s Mot. Summ. J. (ECF No. 34-4).

The first of these requests was Qn. 1.1 where plaintiff sought "a list of items of Documentation/Authorization" concerning the requirements to become a "Letter Carrier" and any specific documentation to become such a carrier for MCSP. Unable to locate any documents specific to state prisons in the Postal Service manuals, Ms. Winslow-Portillo directed plaintiff to

////

publicly available information on its website for a list of the general requirements to become a letter carrier.

Plaintiff argues that this response was improper because he was merely directed to a website that he is unable to access as a state inmate. Defendant counters that there is no specific FOIA requirement that an agency produce publicly available documents from the Internet. See Crews v. Internal Revenue, 2000 WL 900800, at *6 (C.D. Cal. Apr. 26, 2000) ("The IRS has also produced documents that are publicly available either in the IRS reading room or on the internet, and thus not subject to production via FOIA requests.") While true, 5 U.S.C. § 552(a)(3)(B) states that "an agency shall provide the record in any *form or format requested* by the person if the record is readily reproducible by the agency in that form or format." (Emphasis added.)

Thus, had plaintiff requested "a list of items of Documentation/Authorization" in paper format, and assuming defendant did not claim that responsive documents were not readily reproducible, the undersigned would have found the USPS's mere referral to a website insufficient under 5 U.S.C. § 552(a)(3)(B). Here, though, plaintiff did not specify the "form or format" that he wanted the records, and any attempt to modify his request now is improper since the court's review of the agency's decision "must be evaluated as of the time [the request] was made." Bonner v. U.S. Dept. of State, 928 F.2d 1148, 1152 (D.C. Cir. Mar. 26, 1991). "Courts reviewing an agency's action must of necessity limit the scope of their inquiry to an appropriate time frame ... To require an agency to adjust or modify its FOIA responses on post-response occurrence could create an endless cycle of judicially mandated reprocessing." Id. at 1152-53 (internal citations omitted). Accordingly, the undersigned finds that the USPS's response to Qn. 1.1 was proper based on the wording of the request at the time that the agency reviewed it.

In Qn. 2.2 and Qn. 2.3, plaintiff sought records signed by "MR. RAY GARCIA." After searching for such documents, Ms. Winslow-Portillo informed plaintiff that the USPS had no record of a Ray Garcia working for the Postal Service out of the Ione Post Office. Plaintiff takes issue with this response, finding it "ludicrous" that the USPS was unable to identify a "State Employee," asserting that the USPS "**is required** to have some 'proof'" authorizing a prison official to pick-up and deliver mail, and concluding that any statement otherwise is "pure

fantasy." Pl.'s Opp'n at 2 ¶ 3 (emphasis in original).

Plaintiff's argument lacks merit. There is no legal authority for the proposition that a federal agency must possess and/or provide information concerning unrelated state agencies and employees. Furthermore, there is nothing in the record establishing that MCSP employees "pick-up and deliver U.S. Mail to & from the Prison" as opposed to merely distributing mail delivered by a USPS employee. Id. Under these facts, no further response should be required from defendant.

Lastly, in Qn. 2.4, plaintiff sought any materials related to claims he made in an attached affidavit concerning Ray Garcia's return of two envelopes. The USPS initially responded that it "does not have the sworn affidavit in request number (4)." In its moving papers, defendant acknowledges that it overlooked plaintiff's affidavit setting forth the factual basis of his grievance against Ray Garcia. Ms. Winslow-Portillo, as the only Postal Service employee who would be in the position to initiate an investigation into plaintiff's allegations, declares that no such investigation was initiated and therefore there were no memorandums or other documents concerning such an investigation. Winslow-Portillo Decl. ¶ 10. Per Ms. Winslow-Portillo, there would have been no investigation because plaintiff's claims concern an MCSP employee, not a USPS employee. Id. The undersigned finds this response adequate pursuant to the FOIA.

**B.     Other Requests**

The USPS next asserts that it responded properly to plaintiff's other requests by informing him that they were not covered by the FOIA because the Act did not require the USPS to provide responses to mere inquiries and/or documents not in its possession or control. See N.L.R.B. v. Sears, Roebuck & Co., 421 U.S. 132, 161-62 (1975) (holding that an agency is not required to create explanatory materials or write opinions). As defendant correctly points out, the FOIA "only requires disclosure of certain documents which the law requires the agency to prepare or which the agency has decided for its own reasons to create." Id. at 162.

Plaintiff's other requests that defendant contends are outside of the FOIA's purview include Qn. 1.2 (inquiry regarding whether a letter carrier must carry documentation), Qn. 1.3 (inquiry regarding imposition of penalties), Qn. 1.4 (inquiry regarding the initiation of an

investigation), and Qn. 2.1 (a copy of Ms. Winslow-Portillo's law license). See <u>Zemansky v. EPA</u>, 767 F.2d 569, 574 (9th Cir. 1985) ("the [agency] has no duty [under FOIA] either to answer questions unrelated to document requests or to create documents.").On review, the court agrees that these requests exceed the FOIA's scope. As such, defendant's responses are adequate.

While plaintiff asserts a number of arguments in opposition to defendant's motion, these arguments are speculative, untenable, and/or unsupported by the record. Thus, for the aforementioned reasons discussed, defendant's motion for summary judgment should be granted.

**V.     Conclusion**

Based on the foregoing, IT IS HEREBY RECOMMENDED that defendant's motion for summary judgment be GRANTED and this action dismissed with prejudice.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with the findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated:  June 9, 2017

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

/DLB7;
DB/Inbox/Substantive/eles2019.msj

10